David H. Miller (Admitted Pro Hac Vice)
DMiller@sawayalaw.com
SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
(303) 839-1650 x 1090
*Attorneys for Plaintiffs Price, et al.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amber Price; Karen Harrison; Kyle Williams; Julie Affolder; Morrison Campbell; George Eardley; Kenneth Gildar; Rebecca Richmond; Challais Halley; Chelsae White; April Wright; Abigail Houp Kearns; Stephanie Pasanen; Crystal Baker; Kimberly Whalen; Warren Gretzinger; Daniel Sommerhauser,<br><br>on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>Sprouts Farmers Market, Inc, d/b/a/ Sprouts Farmers Market, LLC,<br><br>　　　　　Defendant. | Civil Action No. 16-cv-2047-PHX-DLR<br>SECOND AMENDED  COMPLAINT<br>HON. DOUGLAS L. RAYES |

---

## SECOND AMENDED COMPLAINT

---

The Plaintiffs named herein, on their individual behalves and on behalf of the Subclasses and Collective described herein, by and through their undersigned attorneys, complain and allege as follows:

## CLASS AND COLLECTIVE ACTION COMPLAINT

This case is brought by Plaintiffs individually and as representatives of the within described members of the Plaintiff Subclasses and Collective (hereinafter the "Plaintiffs" or the "Plaintiff Class") who had their personal identifying information ("PII")—in the form of their 2015 IRS W2s ("W-2s")—accessed, stolen, and used without their authorization, because of the negligence, breaches of statutory, common law and contractual duties, and other acts and omissions described herein by Defendant Sprouts Farmers Market, Inc. ("Sprouts"). As a result thereof the members of the Plaintiff Class have suffered actual harm and monetary damages. Plaintiffs brings this action to obtain declaratory and injunctive relief, damages (including compensatory, statutory, exemplary and punitive damages), costs of suit, attorneys' fees and other appropriate relief on their own individual behalf, and on behalf of all others similarly situated, specifically the majority of workers who filled over 21,000 Sprouts employment positions during 2015. The case is brought as both a class and collective action (hereinafter referred to as the "Class Action").

## NATURE OF THE CASE

1.      Plaintiffs bring this Class Action on the behalf of what Plaintiffs believe to be a majority of Sprouts workers who filled more than 21,000 Sprouts employment

positions in 2015 and who have had their PII and tax information accessed, stolen and used illegally as a result of the acts and failures to act of the Defendant. This case seeks to remedy the harmful effects and actual damages suffered by the members of the Plaintiff Class caused by Sprouts and its data breach that occurred in or about March 2016 wherein it released the 2015 IRS form W2s for its workers to an unknown third party or parties by way of email transmission(s) sent by Sprouts from its corporate offices in the state of Arizona.

2.      Through its negligent action Sprouts failed to protect and timely and reasonably notify members of this Class Action of the breach in accordance with the laws of ~~most~~ the states in which the employees worked, including Alabama, Arizona, California,  Colorado, Florida, Georgia, Massachusetts, Missouri, New Mexico, Nevada, Oklahoma, Tennessee, and Texas, and, other laws, including but not limited to the Fair Labor Standards Act ("FLSA"), which  requires Plaintiffs to be properly paid for work performed on behalf of an employer.

3.      Defendant was negligent in storing, maintaining and disclosing its employees' 2015 W-2s and that negligence has caused actual damaged to the Plaintiff Class and has additionally placed  Plaintiffs at an increased risk of fraud, identity theft, and financial injury associated with repairing the identity theft that has already occurred, monitoring future attempts at identity theft, compensating the Plaintiffs for damage that has already occurred and will continue to occur in the future, and guarding against unauthorized tax filing and other abuse that is a direct and proximate result of Sprout's violations of Plaintiffs' rights.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Defendant is an incorporated for profit business entity whose principal place of business and corporate headquarters is in Phoenix, Arizona.

5.      The Plaintiff Class performed work for Sprouts in 2015; and reside, or at the time of the breach in 2016, resided in Arizona and other states in which Sprouts then did business including Alabama, Arizona, California, Colorado, Florida, Georgia, Massachusetts, Missouri, New Mexico, Nevada, Oklahoma, Tennessee and Texas.

6.      Plaintiff Class members who on information and belief filled a majority of the more than 21,000 Sprouts employment positions in 2015 had their PII accessed, wrongfully disclosed by Sprouts, and given without their authorization to an unknown third party or parties.  The aggregate amount in controversy exceeds $5,000,000.

7.      This Court has personal jurisdiction over the parties because the Defendant conducts substantial business in this State, has had systematic and continuous contacts within this State, and has agents and representatives that can be found in this State.

8.      Under 28 U.S.C. § 1391, venue is proper in this District because Defendant engaged in substantial conduct relevant to the claims of Plaintiffs, and caused harm to members of the Class in this District.

**PARTIES**

9.      The Plaintiff Class is comprised of 3 subclasses of 2015 Sprouts workers. While Sprouts had a practice under which a large number, but not all of its 2015 workers,

were required to sign Arbitration Agreements that prohibited class action participation, none of the Plaintiffs described herein are subject to any such Arbitration Agreement with Sprouts for the reasons set out below. Those subclasses consist of: a) Sprouts workers who at the time of the data breach were minors under the age of 18, and for whom the Arbitration Agreement was signed by a legal guardian, but who have now revoked such Arbitration Agreement(s); b) Sprouts workers who never signed or entered into any Arbitration Agreements with Sprouts, and; c) Sprouts workers who entered into Arbitration Agreements with Sprouts which state: "This Agreement does not cover claims: ... within the jurisdictional limit of the small claims court in the jurisdiction in which Team Member resides," who are seeking damages within the jurisdictional limits of the small claims courts in the jurisdictions in which they resided, and who at the time of the data breach resided in any of the following states: Arizona, California, Colorado, Georgia, Missouri, New Mexico, Nevada or Texas.

10. The Plaintiffs herein, on information and belief, allege that over one-half of Sprouts' 2015 workers who manned over 21,000 employment positions who were subject to the 2016 data breach fall within the description of the Plaintiff Class set out above and as described herein as being excluded from any Arbitration Agreement in this lawsuit. On information and belief, the number of those excluded from the Arbitration Agreements exceeds 15,000 workers.

11. With respect to all other 2015 Sprouts workers who are subject to Sprouts Arbitration Agreement(s), scores of them have sought individual arbitrations according to the terms of their Arbitration Agreement with Sprouts outside of this litigation.

**SUBCLASSES**

A.      Minors Who Have Become Emancipated And Have Revoked Their Arbitration Agreements

12.      Plaintiff Amber Price is a former employee of Sprouts.  She is currently a resident of Colorado. She was under the age of 18 when she was employed by Sprouts in 2015 at one of its Denver, Colorado, grocery stores.  Ms. Price has since become of legal age, and has already filed her consent in this case; so already is a Plaintiff in this proceeding. (See Doc 55 at ¶ 48).  On her behalf, her mother and legal guardian, Debra Price, a former 2015 Sprouts employee and previously named Plaintiff in this lawsuit, prior to Amber Price's emancipation signed what she was told was a non-negotiable Sprouts Arbitration Agreement for her daughter because Sprouts required it to be signed as a condition of her daughter's employment. When Plaintiff Amber Price reached the age of majority she sent to Sprouts a written revocation of that Arbitration Agreement for herself and on behalf of all other Sprouts employees similarly situated nationwide.

13.      Amber Price revoked any and all such  Arbitration Agreements related to employment with Sprouts, on her own behalf and on behalf of all other Sprouts employees similarly situated nationwide, on or about June 1 and 11, 2018. As a result of the Sprouts data breach, Amber Price and all others similarly situated have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised. Amber Price and all others similarly situated will need to expend additional time, money and resources to

address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use.

       **B.**     **Sprouts Workers Who Never Signed An Arbitration Agreement**

       14.     Plaintiff Karen Harrison is a former employee of Sprouts. She is currently a resident of Arizona. She was employed by Sprouts in 2015 at one of its Phoenix, Arizona grocery stores. Ms. Harrison has already filed her consent in this case and so already is a Plaintiff in this proceeding. (See Doc 55 at ¶ 27). Plaintiff Karen Harrison did not sign an Arbitration Agreement with Sprouts and represents all other Sprouts employees similarly situated nationwide who did not sign an Arbitration Agreement with Sprouts. As a result of the Sprouts data breach, Karen Harrison, and all others similarly situated who did not sign an Arbitration Agreement with Sprouts, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised. Karen Harrison, and all others similarly situated who did not sign an Arbitration Agreement with Sprouts, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use.

       15.     Plaintiff Kyle Williams is a former employee of Sprouts. He is currently a resident of Arizona. He was employed by Sprouts in 2015 at one of its Grand Junction, Colorado grocery stores. Mr. Williams has already filed his consent in this case and so already is a Plaintiff in this proceeding. (See Doc 45-1 at p. 22 of 30). Plaintiff Kyle Williams did not sign any Arbitration Agreement with Sprouts and represents all other

Sprouts employees similarly situated nationwide who did not sign an Arbitration Agreement with Sprouts. As a result of the Sprouts data breach, Kyle Williams, and all others similarly situated who did not sign an Arbitration Agreement with Sprouts, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised. Kyle Williams, and all others similarly situated who did not sign an Arbitration Agreement with Sprouts, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use.

16.     Plaintiff Julie Affolder is a current employee of Sprouts. She is currently a resident of Arizona. She was employed by Sprouts in 2015 at one of its Tucson, Arizona grocery stores. Plaintiff Julie Affolder did not sign any Arbitration Agreement with Sprouts and represents all other Sprouts employees similarly situated nationwide who did not sign an Arbitration Agreement with Sprouts. As a result of the Sprouts data breach, Julie Affolder, and all others similarly situated who did not sign an Arbitration Agreement with Sprouts, has suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised.

17.     Like all other Class members, Julie Affolder's W-2 information was stolen. When she filed her 2015 taxes she discovered that someone had fraudulently filed taxes in her name. She had to refile her 2015 taxes using a special pin number provided by the IRS. Julie Affolder, and all others similarly situated who did not sign an Arbitration

8

Agreement with Sprouts, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to make certain their social security number and other PII remains protected from fraudulent use. Julie Affolder is required to use a special pin number provided by the IRS to file her taxes each year in the future.

      C.      **Sprouts Workers Suing for Damages within the Jurisdictional Limit of the Small Claims Court in Which Team Member Resided at the Time of the Breach**

           1.  Arizona:

18.     Plaintiff Morrison Campbell is a former employee of Sprouts. He is currently a resident of Arizona. He was employed by Sprouts in 2015 at one of its Glendale, Arizona grocery stores. Mr. Campbell has already filed his consent in this case and so already is a Plaintiff in this proceeding. (See Doc 49-1 at p. 5 of 14). Morrison Campbell was employed at one of Sprouts' Arizona grocery stores in March 2016 and resided in the state of Arizona when the data breach occurred. Morrison Campbell signed an Arbitration Agreement that "does not cover claims . . . within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides." The jurisdictional limit for the small claims court in Arizona is $3,500. Mr. Morrison represents himself and all other Sprouts employees similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona.

19.     As a result of the Sprouts data breach, Morrison Campbell, and all others similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised. Morrison Campbell, and all others similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Morrison Campbell, and all others similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona each seek damages in an amount up to and within the jurisdictional limit of the small claims courts in Arizona.

20.     Plaintiff George Eardley is a former employee of Sprouts. He is currently a resident of Arizona. He was employed by Sprouts in 2015 at one of its Glendale, Arizona grocery stores. Mr. Eardley has already filed his consent in this case and so already is a Plaintiff in this proceeding. (See Doc 49-1 at p. 12 of 14). George Eardley was employed at one of Sprouts' Arizona grocery stores in March 2016 and resided in the state of Arizona when the data breach occurred. George Eardley signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the

jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in Arizona is $3,500. Mr. Eardley represents himself and all other Sprouts employees similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona.

21.     As a result of the Sprouts data breach, George Eardley, and all others similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised. Like all other Class members, George Eardley's W-2 information was stolen. His 2017 tax refund was locked and someone fraudulently applied for two MasterCards using his PII and fraudulently incurred charges to his credit union. He reported the fraudulent charges to the Glendale, Arizona police. George Eardley, and all others similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. George Eardley, and all others similarly situated who resided in Arizona when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Arizona each seek

damages in an amount up to and within the jurisdictional limit of the small claims courts in Arizona.

2.   California

22.     Plaintiff Kenneth Gildar is a former employee of Sprouts. He is currently a resident of California. He was employed by Sprouts in 2015 at one of its Seal Beach, California grocery stores. Kenneth Gildar was employed at one of Sprouts' California grocery stores in March 2016 and resided in the state of California when the data breach occurred. Kenneth Gildar signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in California is $5,000. Mr. Gildar represents himself and all other Sprouts employees similarly situated who resided in California when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in California.

23.     As a result of the Sprouts data breach, Kenneth Gildar, and all others similarly situated who resided in California when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in California, have suffered actual, tangible damages and monetary losses leaving them vulnerable to identity theft and a threat that their credit will be compromised. As an example, because of the data breach another person fraudulently filed for Mr. Gildar's tax refund and delayed him getting that refund of over $1,000 for

more than a year. Mr. Gildar now and for the rest of his life will have to take special precautions when filing his taxes.

24.     Kenneth Gildar, and all others similarly situated who resided in California when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in California, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Kenneth Gildar, and all others similarly situated who resided in California when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in California each seeks damages in an amount up to and within the jurisdictional limit of the small claims courts in California.

25.     Plaintiff Rebecca Richmond is a former employee of Sprouts. She is currently a resident of California.   She was employed in 2015 by Sprouts at California grocery stores located in Irvine, California, Costa Mesa, California and San Clemente, California. Rebecca Richmond was employed at one of Sprouts' California grocery stores in March 2016 and resided in the state of California when the data breach occurred. Rebecca Richmond signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in California is $5,000. Ms. Richmond represents herself and all other Sprouts employees similarly situated who resided in California when the data breach occurred and who signed an Arbitration

13

1   Agreement that does not cover claims within the jurisdictional limit of the small claims

2   court in California.

3       26.     As a result of the Sprouts data breach, Rebecca Richmond, and all others

4   

5   similarly situated who resided in California when the data breach occurred and who

6   signed an Arbitration Agreement that does not cover claims within the jurisdictional limit

7   of the small claims court in California, have suffered actual, tangible damages and

8   

9   monetary losses leaving them vulnerable to identity theft and a threat that their credit will

10  be compromised. Rebecca Richmond, and all others similarly situated who resided in

11  California when the data breach occurred and who signed an Arbitration Agreement that

12  

13  does not cover claims within the jurisdictional limit of the small claims court in

14  California, will need to expend additional time, money and resources to address the

15  damages and harm caused by the Sprouts data breach to insure that their social security

16  

17  number and other PII remains protected from fraudulent use. Rebecca Richmond, and all

18  others similarly situated who resided in California when the data breach occurred and

19  who signed an Arbitration Agreement that does not cover claims within the jurisdictional

20  limit of the small claims court in California each seek damages up to and including the

21  

22  jurisdictional limit of the small claims court in California.

23          3.  Colorado

24      27.     Plaintiff Challais Halley is a former employee of Sprouts. She is currently a

25  

26  resident of Colorado. She was employed in 2015 by Sprouts at Colorado grocery stores

27  located in Grand Junction, Colorado and Denver, Colorado. Challais Halley was

28  employed at one of Sprouts' Colorado grocery stores in March 2016 and resided in the

state of Colorado when the data breach occurred. Challais Halley signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in Colorado is $7,500. Ms. Halley represents herself and all other Sprouts employees similarly situated who resided in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado.

28.     As a result of the Sprouts data breach, Challais Halley, and all others similarly situated who resided in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised. Challais Halley, and all others similarly situated who resided in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Challais Halley, and all others similarly situated who resided in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado each seek damages up to and including the jurisdictional amount of the small claims court in Colorado.

15

29.     Chelsae White is a former employee of Sprouts. She is currently a resident of Colorado. She was employed in 2015 by Sprouts at Colorado grocery stores located in Englewood, Colorado and Greenwood Village, Colorado. Ms. White has already filed her consent in this case and so already is a Plaintiff in this proceeding. (See Doc 45-1 at p. 23 of 30). Chelsae White was employed at one of Sprouts' Colorado grocery stores in March 2016 and resided in the state of Colorado when the data breach occurred. Chelsae White signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in Colorado is $7,500. Ms. Halley represents herself and all other Sprouts employees similarly situated who resided in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado. As a result of the Sprouts data breach, Chelsae White, and all others similarly situated who resided in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado, have suffered actual, tangible damages and monetary losses leaving them vulnerable to identity theft and a threat that their credit will be compromised.

30.     For example, Chelsae White, because of the data breach had to place holds on her financial accounts and experienced fraudulent transactions within her bank account, as well as having to communicate with credit agencies and the IRS concerning the fraud perpetrated against her. Ms. White and all others similarly situated who resided

16

in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Chelsae White, and all others similarly situated who resided in Colorado when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Colorado each seek damages up to and including the jurisdictional amount of the small claims court in Colorado

4.  Georgia

31.     Plaintiff April Wright is a former employee of Sprouts. She is currently a resident of Florida. She was employed by Sprouts in 2015 at one of its Suwanee, Georgia grocery stores. Ms. Wright has already filed her consent in this case and so already is a Plaintiff in this proceeding. (See Doc 55 at ¶ 68). April Wright was employed at one of Sprouts' Georgia grocery stores in March 2016 and resided in the state of Georgia when the data breach occurred. April Wright signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in Georgia is $15,000. Ms. Wright represents herself and all other Sprouts employees similarly situated who resided in Georgia when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Georgia. As a result of the Sprouts data breach, April Wright, and

all others similarly situated who resided in Georgia when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Georgia, have suffered actual, tangible damages and monetary losses leaving them vulnerable to identity theft and a threat that their credit will be compromised.

32.     For example, April Wright suffered tax fraud because of the data breach and an unknown third party filed for her tax refund, delaying the receipt of such funds by approximately 6 months or more. Additionally she has had to communicate with and personally visit the IRS and prove to the agency that she is who she claims to be. She spends an hour or more each month having to monitor financial accounts and has had to hire an accountant to assist with her taxes, and now has to use special filing procedures, including the use of a special PIN for the rest of her life, while filing her taxes.

33.     Ms. Wright and all others similarly situated who resided in Georgia when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Georgia, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. April Wright, and all others similarly situated who resided in Georgia when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Georgia each seek damages up to an including the jurisdictional limit of the small claims court in Georgia

5.  Missouri

34.     Plaintiff Abigail Houp Kearns ("Houp") is a former employee of Sprouts.

She is currently a resident of Missouri. She was employed by Sprouts in 2015 as Abigail

Houp at one of its Kansas City, Missouri grocery stores. Ms. Houp has already filed her

consent in this case and so already is a Plaintiff in this proceeding. (See Doc 55 at ¶ 30).

Abigail Houp was employed at one of Sprouts' Missouri grocery stores in March 2016

and resided in the state of Missouri when the data breach occurred. Abigail Houp signed

an Arbitration Agreement that does not cover claims within the jurisdictional limit of the

small claims court in the jurisdiction in which the team member resides. The

jurisdictional limit for the small claims court in Missouri is $5,000. Ms. Houp represents

herself and all other Sprouts employees similarly situated who resided in Missouri when

the data breach occurred and who signed an Arbitration Agreement that does not cover

claims within the jurisdictional limit of the small claims court in Missouri.

35.     As a result of the Sprouts data breach, Abigail Houp, and all others

similarly situated who resided in Missouri when the data breach occurred and who signed

an Arbitration Agreement that does not cover claims within the jurisdictional limit of the

small claims court in Missouri, have suffered actual, tangible damages and monetary

losses leaving them vulnerable to continuing identity theft and a threat that their credit

will be compromised.

36.     For example, Abigail Houp's tax return was delayed for months with

respect to her filing for the 2015 tax year because of the data breach and she has had to

spend many hours monitoring and checking her financial accounts and credit accounts for

fraud. Ms. Houp and all others similarly situated who resided in Missouri when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Missouri, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Abigail Houp, and all others similarly situated who resided in Missouri when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Missouri each seek damages up to and including the jurisdictional amount of the small claims court in Missouri

6.  New Mexico

37.     Plaintiff Stephanie Pasanen is a former employee of Sprouts. She is currently a resident of New Mexico. She was employed in 2015 by Sprouts at one of its Santa Fe, New Mexico grocery stores. Stephanie Pasanen was employed at one of Sprouts' New Mexico grocery stores in March 2016 and resided in the state of New Mexico when the data breach occurred. Ms. Pasanen has already filed her consent in this case and so already is a Plaintiff in this proceeding. (See Doc 45-1 at p. 16 of 30). Stephanie Pasanen signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in New Mexico is $10,000. Ms. Pasanen represents herself and all other Sprouts employees similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement

that does not cover claims within the jurisdictional limit of the small claims court in New Mexico. As a result of the Sprouts data breach, Stephanie Pasanen, and all others similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in New Mexico, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised.

38.    For example, Stephanie Pasanen has had to personally visit with her credit union to monitor her accounts because of the data breach. She also uses the services of a credit monitoring firm since Sprouts has refused to provide such services since the expiration of the first year following the data breach. She has communicated with the police based on and concerning the breach. Accordingly, she and all others similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in New Mexico, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Stephanie Pasanen, and all others similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in New Mexico each seeks damages in the amount up to and including the jurisdictional limits of the small claims court in New Mexico.

1

2

3          7.  Nevada

4      39.    Plaintiff Crystal Baker is a former employee of Sprouts. She is currently a

resident of Nevada. She was employed by Sprouts in 2015 at one of its Las Vegas,

Nevada grocery stores. Ms. Baker has already filed her consent in this case and so

already is a Plaintiff in this proceeding. (See Doc 55 at ¶ 4). Crystal Baker was employed

at one of Sprouts' Nevada grocery stores in March 2016 and resided in the state of

Nevada when the data breach occurred. Crystal Baker signed an Arbitration Agreement

that does not cover claims within the jurisdictional limit of the small claims court in the

jurisdiction in which the team member resides. The jurisdictional limit for the small

claims court in Nevada is $10,000. Ms. Baker represents herself and all other Sprouts

employees similarly situated who resided in Nevada when the data breach occurred and

who signed an Arbitration Agreement that does not cover claims within the jurisdictional

limit of the small claims court in Nevada. As a result of the Sprouts data breach, Crystal

Baker, and all others similarly situated who resided in Nevada when the data breach

occurred and who signed an Arbitration Agreement that does not cover claims within the

jurisdictional limit of the small claims court in Nevada, have suffered actual, tangible

damages and monetary losses leaving them vulnerable to continuing identity theft and a

threat that their credit will be compromised.

       40.    Crystal Baker, and all others similarly situated who resided in Nevada

when the data breach occurred and who signed an Arbitration Agreement that does not

cover claims within the jurisdictional limit of the small claims court in Nevada, will need

to expend additional time, money and resources to address the damages and harm caused

by the Sprouts data breach and to insures that their social security number and other PII remains protected from fraudulent use. As a result of the data breach Ms. Baker experienced fraudulent financial charges to her credit accounts, had to spend many hours monitoring her accounts and credit and was required to change credit accounts. Crystal Baker, and all others similarly situated who resided in Nevada when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Nevada each seek damages in an amount up to and including the jurisdictional limit of the Nevada small claims court.

41.     Plaintiff Kimberly Whalen is a former employee of Sprouts. She is currently a resident of Nevada. She was employed by Sprouts in 2015 at one of its Las Vegas, Nevada grocery stores. Ms. Whalen has already filed her consent in this case and she is therefore already a Plaintiff in this case. (Doc 55 at ¶ 65). Kimberly Whalen was employed at one of Sprouts' Nevada grocery stores in March 2016 and resided in the state of Nevada when the data breach occurred. Kimberly Whalen signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in New Mexico is $10,000. Ms. Wright represents herself and all other Sprouts employees similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in New Mexico. As a result of the Sprouts data breach, Kimberly Whalen, and all others similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement that

does not cover claims within the jurisdictional limit of the small claims court in New Mexico, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised. Kimberly Whalen, and all others similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in New Mexico, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Kimberly Whalen, and all others similarly situated who resided in New Mexico when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in New Mexico each seeks damages in an amount up to and including the jurisdictional limit of the Nevada small claims court.

8. Texas

42. Plaintiff Warren Gretzinger is a former employee of Sprouts. He is currently a resident of Texas. He was employed by Sprouts in 2015 at Texas grocery stores located in Austin, Texas and Cedar Park, Texas. Warren Gretzinger was employed at one of Sprouts' Texas grocery stores in March 2016 and resided in the state of Texas when the data breach occurred. Warren Gretzinger signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in Texas is $10,000. Mr. Gretzinger represents himself and all other Sprouts

employees similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Texas. As a result of the Sprouts data breach, Warren Gretzinger, and all others similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Texas, have suffered actual, tangible damages and monetary losses leaving them vulnerable to continuing identity theft and a threat that their credit will be compromised.

43.     For example, Warren Gretzinger suffered tax fraud when some third party fraudulently filed taxes on his account because of the data breach. He has had to make multiple personal trips to the IRS office because of the breach. He has experienced multiple attempts at credit fraud where third parties use his PII to attempt fraudulently to obtain credit in his name. His credit score has gone down because of all the fraudulent activity on his account and he has to regularly spend time each week on monitoring his credit status. Accordingly, he and all others similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Texas, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Warren Gretzinger, and all others similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the

small claims court in New Texas each seek damages in an amount up to and including the jurisdictional limit of the Texas small claims court

44.     Plaintiff Daniel Sommerhauser is a former employee of Sprouts. He is currently a resident of Florida. He was employed by Sprouts in 2015 at one of its Hurst, Texas grocery stores. Daniel Sommerhauser was employed at one of Sprouts' Texas grocery stores in March 2016 and resided in the state of Texas when the data breach occurred. Daniel Sommerhauser signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in the jurisdiction in which the team member resides. The jurisdictional limit for the small claims court in Texas is $10,000. Mr. Sommerhauser represents himself and all other Sprouts employees similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Texas. As a result of the Sprouts data breach, Daniel Sommerhauser, and all others similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Texas, have suffered actual, tangible damages and monetary losses leaving them vulnerable to identity theft and a threat that their credit will be compromised.

45.     For example, Daniel Sommerhauser experienced tax filing fraud for his 2015 taxes when another person filed using his PII. His IRS account was placed on hold. His filing was delayed and that required him to have to pay his accountant for help. He has had to pay for credit score monitoring when Sprouts only provided 1 year of services

and he has had to change his bank account and regularly monitor his financial and credit accounts because of the data breach. Accordingly, he and all others similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in Texas, will need to expend additional time, money and resources to address the damages and harm caused by the Sprouts data breach and to insure that their social security number and other PII remains protected from fraudulent use. Daniel Sommerhauser, and all others similarly situated who resided in Texas when the data breach occurred and who signed an Arbitration Agreement that does not cover claims within the jurisdictional limit of the small claims court in New Texas each seek damages in an amount up to and including the jurisdictional limit of the Texas small claims court.

46.     Defendant Sprouts is a Delaware corporation with it principal place of business in Arizona at 11811 N. Tatum Boulevard, Suite 2400, Phoenix, Arizona 85028, and headquartered at 5455 E. High Street, Suite 111, Phoenix, AZ 85054. Sprouts operates a nationwide chain of more than 220 grocery stores in across the United States and employed workers in over 21,000 employment positions in 2015.

## FACTUAL ALLEGATIONS

47.     Plaintiffs incorporate the preceding factual allegations as though fully set forth herein.

48.     The Plaintiff Class was employed by Sprouts during 2015 and were issued W-2s in 2016 which were the subject of the data breach in which Sprouts negligently sent to an unknown party or parties copies of those W-2s in March of 2016.

49.     On information and belief, on or about March 14, 2016, the payroll department at Sprouts headquarters disclosed all its employees' 2015 W-2 earning statements to an unknown person or persons who sent an email claiming to be a Sprouts' executive.

50.     On March 17, 2016, Sprouts claims it became aware of a data breach disclosing its employees' 2015 W-2's.

51.     The W-2s include an employee's full name, address, social security number ("SSN"), wages, and taxes withheld in 2015.

52.     Sprouts has claimed that it alerted its employees before March 28, however the only notice Plaintiffs and other class members received of this data breach was on or around April 1, 2016, or later, when a letter arrived in the mail, dated March 28, 2016, informing Plaintiffs that they and 21,000 of their former coworkers' 2015 W-2's were disclosed to an unknown person claiming to be a Sprouts senior executive.

53.     The letter stated that:

a)  Sprouts was the victim of a phishing scam the week of March 14, 2016.

b)  Sprouts disclosed all 2015 form W-2 wage and tax statements when fulfilling what was believed to be a legitimate request for information

c)  Sprouts became aware of the incident on March 17, 2016

d)  Sprouts disclosed form W-2 which includes full name, address, SSN, wages, taxes withheld in 2015.

e)  Sprouts claimed that it did not disclose birthdate, bank information, credit card information, or email addresses.

f)  Sprouts stated that they had taken steps to address the situation, and suggested steps the recipient of the letter could take to protect their personal information.

g)  Sprouts claimed it took immediate action as soon as it discovered the breach.

h)  Sprouts stated it contacted the FBI

i)  Sprouts also stated that it communicated "promptly" with their employees/former employees so that those employees and former employees could take steps to protect themselves.

j)  Sprouts offered each employee/former employee a complimentary one-year membership of Experian's Protect MyID Alert.

k)  Sprouts suggested that each employee obtain their free credit report from the credit bureaus, and look to the FTC to obtain more information about placing a security freeze on their credit files, and placing a fraud alert on their accounts also.

l)  Sprouts set up a tool free hotline for questions – 855-814-8016 and teammemberhelp@sprouts.com

m) The letter was signed by Brandon Lombardi, Chief Legal Officer.

54.     The letter also stated that it had previously notified employees about the breach before the March 28 letter. However, none of the above-named Plaintiffs who

29

worked at Sprouts in 2015 had received actual notice of the data theft before receiving the letter.

55.     As a result of the data breach unknown third parties now possess the PII of Sprout's employees and former employees who are the Plaintiffs in this case.

56.     As a direct and proximate cause of Sprout's disclosure of its employees 2015 W-2's the Plaintiffs' SSNs were stolen and used to claim Plaintiff Price, Esposito and Wilson's tax refund and an as yet unknown number of other Plaintiffs' tax refunds.

57.     Upon information and belief the information was disseminated and transmitted over the internet in and from the state of Arizona by Sprouts.

58.     A person's social security number is perhaps the most important piece of information to an individual in the modern world.  It is used among other things to verify eligibility for employment, to apply for a passport, to open a bank account, to apply for a credit card, or a student loan, or a mortgage.  A social security number is also needed to obtain government benefits like social security and Medicare.  Social security numbers are assigned to citizens (and sometimes to noncitizens) as early as their birth and are required to enroll in school, and to obtain healthcare services.  A social security number follows a person through life.

59.     Sprouts, as an employer, required Plaintiffs to surrender to it their SSNs and other PII, and Sprouts was entrusted with properly holding and safeguarding such PII.

60.     Sprouts had a duty as an employer to guard and protect the private, highly sensitive, confidential PII of the Plaintiffs.

61.     Sprouts had a duty as a business to take reasonable measures to secure Plaintiffs' private information that was entrusted to it.

62.     Sprouts not only failed to safeguard and prevent the theft of this PII from its computers or network, but voluntarily handed it over to third parties upon their mere electronically delivered email request.

63.     Sprouts failed to take reasonable precautions to protect the Plaintiffs' PII, and otherwise failed to act reasonably in fulfillment of their duty not to disclose Plaintiffs' PII, and affirmatively to protect that PII.

64.     Sprouts negligently and carelessly kept its employees and former employees personal information.

65.     The risk to theft by or disclosure to cyber criminals of sensitive data, including PII, stored electronically is and was at the time of the data breach well-known and common knowledge.

66.     Despite this knowledge, Sprouts did not encrypt or password-protect any of the Plaintiffs' PII that it wrongfully disclosed.

67.     Sprouts' release of the PII was wantonly and willfully done.

68.     Sprouts did not encrypt or password-protect its Plaintiffs' social security numbers as a prudent and responsible company would do with its employees' confidential and personal identifying information.

69.     Arizona's Consumer Protection Act prohibits a person or entity from requiring an individual to transmit his or her social security number over the internet, unless the connection is secure or the social security number is encrypted.

31

70.     Sprouts violated basic guidelines to encrypt or password-protect sensitive information of its employees and in so doing failed to meet the most basic standards of data security and reasonable business practices, and thereby failed to ensure adequate security of the Plaintiffs' personal, and financial PII and by failing to retain this PII in a secure and safe manner.

71.     Cal. Civ. Code §1798.81.5  requires any business that maintains personal information about a California resident to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access or disclosure.

72.     Sprouts violated California law by failing to implement reasonable or appropriate security procedures, measures or protocols to protect its current and former employees' PII in accordance with the law.

73.     As a direct and proximate cause of Sprout's actions, all its employees and former employees have been required to spend man hours addressing and ameliorating or otherwise dealing with actual and ongoing harm to the PII and W2 information – information that Sprouts would not have  been able to wrongfully disclose but for the employment relationship between it and the Plaintiffs.

74.     Sprouts has failed to pay the Plaintiffs and Class at least minimum wage for the time spent as a result of its actions.

75.     Within only a week of the data breach, Plaintiffs' PII was used to try to steal Plaintiffs' federal tax returns, to wreak havoc on Plaintiffs' tax filing and cause unmeasured damage to the remainder of Plaintiffs' identities, which damage is ongoing.

## CLASS ALLEGATIONS

76.     Plaintiffs here incorporate the above allegations by this reference.

77.     Plaintiffs bring this case also as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of  all Plaintiffs and as members of the following proposed Subclasses: All of those 2015 Sprouts workers whose W-2s were the subject of the data breach and who fit within the descriptions of the Subclasses described above in paragraphs 14-30 which are made up of 2015 Sprouts workers who 1) were minors at the time of their employment in 2015 and whose Arbitration Agreements have been revoked, and/or ; 2) never signed any Sprouts Arbitration Agreement, and/or; 3) at the time of the breach had worked for Sprouts in 2015, were not members of Subclasses 1) or 2) above, and were residents on one of the following states: Arizona, California, Colorado, Georgia, Missouri, New Mexico, Nevada, or Texas. Members of Subclass 3) seek damages up to the jurisdictional limit of the small claims court in the state they were a resident at the time of the data breach.

### *Numerosity*

78.     The proposed Subclasses are so numerous that joinder of all of their members is impractical.  On information and belief the majority of 2015 Sprouts workers who filled more than 21,000 Sprouts employment positions in 2015 suffered the loss of their PII due to the actions and failures of the Defendant and on information and Plaintiffs allege that the majority of them are included within the description of the Subclass members described above because of turnover within the Plaintiff Class during

2015. On information and belief the Plaintiffs allege that over 15,000 workers had their 2015 W-2s sent to an unauthorized person or persons as part of the data breach.

*Common Questions of Law and Fact*

79.     There are multiple issues of law and fact in this case against the Defendant that are common to the Class, including the following:

80.     Whether the Defendant received and stored PII of the Plaintiff Class.

81.     The standard under which Defendant is to be held with respect to its possession and/or dissemination of Plaintiffs' PII;

82.     Whether the  Defendant had a duty to act reasonably in protecting the PII of Plaintiffs in its care, custody and control;

83.     Whether the Defendant failed to act reasonably in protecting the PII of Plaintiffs in its care, custody and control;

84.     Whether the actions and/or failures to act of the Defendant caused the PII of Plaintiffs to be accessed, stolen and/or used without authorization;

85.     Whether the Defendant failed to timely and reasonably notify Plaintiffs of the theft of their PII in conformity with the laws of Arizona and the other states involved;

86.     Whether the Defendant's notification contained false or misleading information and/or failed to inform Plaintiffs of material information necessary to allow Plaintiffs to protect themselves from further harm due to the disclosure of their PII;

87.     Whether the Defendant have been unjustly enriched by having obtained the labor and other benefits from services of Plaintiffs, and the saving of costs that would

have been expended had they acted reasonably to protect the PII in their care, custody and control;

88.     Whether the Defendant breached its agreements, express and implied, with Plaintiffs;

89.     Whether the Defendant violated the duty of good faith and fair dealing in their agreements with Plaintiffs;

90.     Whether Defendant breached a fiduciary duty it had toward the Plaintiffs;

91.     Whether the Defendant complied with the security notification laws of Arizona and other States involved upon learning of the breach of the PII of Plaintiffs;

92.     Whether the Defendant violated the consumer protection laws of Arizona and other states involved through their acts and omissions set forth in this Complaint;

93.     Whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief as to Defendants' conduct;

94.     Whether Plaintiffs and the members of the Class are entitled to damages, and, if so, the nature and amount of such damages;

95.      Whether the Plaintiffs and members of the Class shall be found to be employees under the Fair Labor Standards Act for work they reasonably have had to perform to safeguard their PII because of the actions or inactions of Defendants.

96.     Whether Plaintiffs and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

*Typicality*

97.     Plaintiffs' claims are typical of the claims of the members of the Subclasses. Plaintiffs and the members of the Subclasses sustained injuries as a result of the unlawful disclosure of their PII, which injuries were directly and proximately caused by the Defendant's acts and omissions.  As detailed herein, Plaintiffs' knowns harms that have already occurred consisted of the actual theft of their identity by the use of their SSN to file, among other fraudulent transactions, fraudulent tax returns, which has resulted in costs, expenses, emotional distress and other damages and is sure to cause additional and continuing damage to all Plaintiffs.

*Adequacy of Representation*

98.     Plaintiffs can and will fairly and adequately represent and protect the interests of the Subclasses, and Plaintiffs have no interests that conflict with or are antagonistic to the interests of the members of the Subclasses.  Plaintiffs have retained attorneys competent and for over 30 years experienced in complex class actions, including employment related class actions.  No conflict exists between Plaintiffs and the members of the Subclasses.

*Superiority*

99.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

100.     The prosecution of separate actions by individual members of the plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class.  These adjudications would establish incompatible standards of conduct for the Defendant which would, as a practical matter, be disparities of the claims of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

101.     By its dissemination of the Plaintiffs' PII Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

102.     Accordingly, class certification is appropriate under Rule 23(b)(1)(A), 23(b)(1)(B), 23 (b)(2) and 23(b)(3).

## COLLECTIVE ALLEGATIONS

103.     Plaintiffs here incorporate the above allegations by this reference.

104.     Plaintiffs also bring this action as a collective action under 29 U.S.C. § 216(b).

105.     The Plaintiff Class members are "similarly situated" under 29 U.S.C. § 216(b) because they were all subject to the same conduct by Sprouts, i.e., the data breach and the requirement that the Plaintiff Class members perform work to address the data breach.

106.     Plaintiffs have previously filed their consents to join this lawsuit in this action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT I – NEGLIGENCE
### For All Subclasses

107.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

108.    The Defendant owed a duty of care to Plaintiffs and the Class to ensure that their PII was adequately protected again intrusion; kept private; and not used for improper purposes.

109.    The Defendant breached their duty of care to Plaintiffs and the Class to ensure that their PII was not used for improper purposes by failing to provide adequate protections to the PII, by negligently disseminating the PII, and by allowing the PII to be accessed, in unencrypted format, by third parties through the unsecured tender of such PII to a third party or parties who had no authority to obtain such information under circumstances that demonstrate the wanton and willful negligence of Defendant.

110.    As a direct and proximate result of the Defendants' actions alleged above, the Plaintiffs and the Class suffered actual damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT II -- BREACH OF FIDUCIARY DUTY
### For All Subclasses

111.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

112.    Defendant was a fiduciary, as an employer created by its undertaking, to act primarily for the benefit of its employees in matters connected with the their employment.

113.    Plaintiffs and the Class were in a fiduciary relationship by way of the duty Defendant had in relation to the employment of Plaintiffs, and Defendant's duty to act for or to give advice for the benefit of Plaintiffs and the Class upon matters within the scope of their relationship, specifically to keep income records, and report those records in a form W-2 to the IRS as the employer.

114.    The Defendant breached their duty of care to Plaintiffs and the Class to ensure that their PII and W-2 was not used for improper purposes by failing to provide adequate protections to the information and by allowing the information to be accessed, in unencrypted format, by third parties to whom Sprouts voluntarily disseminated the information.

115.    As a direct and proximate result of the Defendants' actions alleged above, the Plaintiffs suffered actual damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT III – BREACH OF CONTRACT
### For All Subclasses

116.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

117.    Plaintiffs and the members of the Class had employment agreements with the Defendant.  These agreements involved a mutual exchange of consideration whereby the Defendant entrusted Plaintiffs and the Class to work in various roles (such as in Sprouts operations, administration, and/or management at its grocery stores) on its behalf, in exchange for the promise of employment, with wages, benefits in some cases, and secure PII.

118.    The failure of Defendants to keep secure from breach the PII of Plaintiffs and the Class constitutes a material breach of the agreement between the Defendant and the Class.

119.    As a direct and proximate result of the aforesaid breaches of the Defendant's agreements with Plaintiff and the Class, Plaintiffs and the Class have suffered actual damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT IV – BREACH OF IMPLIED CONTRACT
### For All Subclasses

120.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

121.    Plaintiffs and the Class were required by the Defendant to provide PII as a condition of their employment.

122.    Implicit in the employment agreement between the Defendant and the Plaintiffs and members of the Class was the obligation that both parties would maintain

information confidentially and securely.  The Defendant implicitly and/or explicitly promised to keep the PII they collected from the Plaintiffs and the Class secure and confidential. In addition, the Defendant implicitly promised to retain this PII only under conditions that safeguarded such information, and to either destroy it after the employment ended, or to take appropriate steps to ensure that it was not improperly lost or stolen.

123.    Plaintiffs and the Class faithfully worked for the Defendant and steadfastly kept their employment obligations.  The Defendant did not.

124.    As a direct and proximate result of the Defendant failures to secure, protect, and/or destroy the PII of the Plaintiffs and the Class, and not to voluntarily disseminate it to third parties, the Plaintiffs and the Class suffered, injury and damages as described herein.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT V – FOR INVASION OF PRIVACY (UNREASONABLE PUBLICITY GIVEN TO ONE'S PRIVATE LIFE)
### For all Subclasses

125.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

126.    The Defendant, through its negligence and carelessness disclosed facts, specifically Plaintiffs and the Class' PII that are private in nature.

41

127.    By failing to protect those private facts the PII was disclosed to an unknown person or persons on the internet.

128.    The Defendant's disclosure of Plaintiffs' and the Class' PII and the subsequent use of that information to claim others tax returns or steal others' identities is highly offensive to a reasonable person.

129.    Plaintiffs' and the Class' W-2 information is not of legitimate concern to the public, but will only be used for nefarious purposes.

130.    By not protecting Plaintiffs and the Class' PII, including their W-2's, the Defendant acted with reckless disregard of the private nature of the facts that were disclosed.

131.    As a direct and proximate result of Sprouts' actions and inactions the Plaintiffs have suffered, and will continue to suffer actual damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

**COUNT VI – FOR VIOLATION OF CALIFORNIA STATUTORY LAWS PROTECTING PERSONALLY IDENTIFYING INFORMATION**
**(Cal. Civ. Code §1798.80, et seq.), (Cal. Civ. Code §56, et seq.)**
**For California Residents Of All Subclasses**

132.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

133.    Cal. Civ. Code §1798.81.5 requires any business that maintains personal information about a California resident to implement and maintain reasonable security

procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access or disclosure.

134.    Sprouts violated the law by failing to implement reasonable or appropriate security procedures, measures or protocols to protect its current and former employees' PII in accordance with the law.

135.    In addition, by failing to immediately notify all affected current and former Sprouts employees that their personal information had been acquired by unauthorized persons, Sprouts violated Cal. Civ. Code §1798.82 of the same title.  Sprouts' failure to immediately notify employees of the breach caused Plaintiffs and Class members to suffer damages because they have lost the opportunity to immediately protect themselves and their information from being used in unauthorized and damaging ways or becoming victims of identity theft.

136.    Under California law, Cal. Civ. Code §§1798.81.5 and 1798.82, Sprouts "may be enjoined" under Cal. Civ. Code §1798.84(e).  Plaintiffs requests that the Court enter an injunction requiring Sprouts to implement and maintain reasonable security procedures to protect its employees' PII, including, but not limited to, ordering that Sprouts: (1) periodically conduct internal training and education to inform internal personnel how to identify and thwart a similar data breach; (2) implement data security measures and controls to prevent a similar data breach; (3) meaningfully educate its current and former employees about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves; and (4)

provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class members, as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT VII – FAILURE TO PAY WAGES UNDER ARIZONA LAW
### Ariz. Rev. Stat. Ann. § 23-363 et seq.
### For Arizona residents of all subclasses

137.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

138.    Pursuant to the applicable provisions of the Ariz. Rev. State Ann. §§ 23-363 and -364, the named Plaintiffs and the Class similarly situated were entitled to at least the minimum Arizona hourly wage ($8.05 per hour in 2015, as amended), for each hour that they labored in Defendant's business and in the event they worked more than 40 hours a week an overtime hourly wage of time and one-half such minimum hourly wage for all hours worked in excess of 40 hours per week.

139.    Through Sprouts' wrongful conduct alleged herein, Sprouts suffered and permitted Plaintiffs and the Class members to work and failed to pay them at least minimum wage for all of the time that Plaintiffs and the Class members reasonably have spent to address and attempt to ameliorate, mitigate, and deal with the actual and ongoing consequences of its release of PI.  That work suffered includes but is not limited to: (i) identifying and dealing with fraudulent charges and accounts, including tax refund fraud, (ii) frequently obtaining and/or purchasing credit reports from multiple credit reporting

agencies, (iii) placing and removing fraud alerts and security freezes on credit reports, (iv) obtaining and/or purchasing credit monitoring and internet monitoring services, (v) obtaining and/or purchasing identity theft insurance, (vi) spending time on the telephone attempting to sort out issues related to the breach, (vii) and in some instances obtaining new Social Security numbers.

140.   Sprouts placed the burden on Plaintiffs and Class members to spend hours of their time addressing these issues.

141.   Plaintiffs and Class members have been required to take these actions as a result of their employment with Sprouts, and Sprouts is or should be aware that Plaintiffs and Class members are taking such actions, and spending hours of their time to do so, Sprouts has suffered and permitted them to work and, thus, is required to pay them at least minimum wage for all hours they spend taking such actions.

142.   As a direct result of Sprouts' conduct alleged herein, Plaintiff and Class members have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages.

143.   Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Sprouts' minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible.

144.   The Plaintiffs and the Class were paid no monetary compensation whatsoever by the Defendant for performing labor suffered or permitted by the Defendant and arising from the employer/employee relationship and such failure to pay the Plaintiffs

and the Class any compensation whatsoever violates the minimum hourly wage and

overtime requirements of Ariz. Rev. Stat. Ann. §§ 23-363, -364.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class,

respectfully seek the relief set forth below.

### COUNT VIII – FAILURE TO PAY WAGES UNDER CALIFORNIA LAW
#### Cal. Lab. Code §§ 1194, 1198 and 2698; IWC Wage Order 7-2001
#### For California residents of all subclasses

145.    Plaintiffs incorporate by reference the preceding and following paragraphs

as though fully set forth herein.

146.    Pursuant to the applicable provisions of the California Labor Code and

Wage Order, §§ 1194, 1198 and 2698; IWC Wage Order 7-2001, the named Plaintiffs

and the Class similarly situated were entitled to at least the minimum California hourly

wage ($9.00 per hour in 2015, as amended), for each hour that they labored in

Defendant's business and in the event they worked more than 40 hours a week an

overtime hourly wage of time and one-half such minimum hourly wage for all hours

worked in excess of 40 hours per week.

147.    Through Sprouts' wrongful conduct alleged herein, Sprouts suffered and

permitted Plaintiffs and the Class members to work and failed to pay them at least

minimum wage for all of the time that Plaintiffs and the Class members reasonably have

spent to address and attempt to ameliorate, mitigate, and deal with the actual and ongoing

consequences of its release of PI.  That work suffered includes but is not limited to: (i)

identifying and dealing with fraudulent charges and accounts, including tax refund fraud,

(ii) frequently obtaining and/or purchasing credit reports from multiple credit reporting

46

agencies, (iii) placing and removing fraud alerts and security freezes on credit reports, (iv) obtaining and/or purchasing credit monitoring and internet monitoring services, (v) obtaining and/or purchasing identity theft insurance, (vi) spending time on the telephone attempting to sort out issues related to the breach, (vii) and in some instances obtaining new Social Security numbers.

148.    Sprouts placed the burden on Plaintiffs and Class members to spend hours of their time addressing these issues.

149.    Plaintiffs and Class members have been required to take these actions as a result of their employment with Sprouts, and Sprouts is or should be aware that Plaintiffs and Class members are taking such actions, and spending hours of their time to do so, Sprouts has suffered and permitted them to work and, thus, is required to pay them at least minimum wage for all hours they spend taking such actions.

150.    As a direct result of Sprouts' conduct alleged herein, Plaintiff and Class members have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages.

151.    Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Sprouts' minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible.

152.    The Plaintiffs and the Class were paid no monetary compensation whatsoever by the Defendant for performing labor suffered or permitted by the Defendant and arising from the employer/employee relationship and such failure to pay the Plaintiffs

and the Class any compensation whatsoever violates the minimum hourly wage and

overtime requirements of Ariz. Rev. Stat. Ann. §§ 23-363, -364.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class,

respectfully seek the relief set forth below.

### COUNT IX – FAILURE TO PAY WAGES UNDER COLORADO LAW
### Colo. Rev. Stat. Ann. § 8-4-105 and 7 C.C.R.  § 1103-1
### For Colorado residents of all subclasses

153.    Plaintiffs incorporate by reference the preceding and following paragraphs

as though fully set forth herein.

154.    Pursuant to the applicable provisions of the Colo. Rev. Stat. Ann. § 8-4-105

and 7 C.C.R.  § 1103-1, the named Plaintiffs and the Class similarly situated were

entitled to at least the minimum Colorado hourly wage ($8.23 per hour in 2015, as

amended), for each hour that they labored in Defendant's business and in the event they

worked more than 40 hours a week an overtime hourly wage of time and one-half such

minimum hourly wage for all hours worked in excess of 40 hours per week.

155.    Through Sprouts' wrongful conduct alleged herein, Sprouts suffered and

permitted Plaintiffs and the Class members to work and failed to pay them at least

minimum wage for all of the time that Plaintiffs and the Class members reasonably have

spent to address and attempt to ameliorate, mitigate, and deal with the actual and ongoing

consequences of its release of PI.  That work suffered includes but is not limited to: (i)

identifying and dealing with fraudulent charges and accounts, including tax refund fraud,

(ii) frequently obtaining and/or purchasing credit reports from multiple credit reporting

agencies, (iii) placing and removing fraud alerts and security freezes on credit reports,

(iv) obtaining and/or purchasing credit monitoring and internet monitoring services, (v) obtaining and/or purchasing identity theft insurance, (vi) spending time on the telephone attempting to sort out issues related to the breach, (vii) and in some instances obtaining new Social Security numbers.

156.    Sprouts placed the burden on Plaintiffs and Class members to spend hours of their time addressing these issues.

157.    Plaintiffs and Class members have been required to take these actions as a result of their employment with Sprouts, and Sprouts is or should be aware that Plaintiffs and Class members are taking such actions, and spending hours of their time to do so, Sprouts has suffered and permitted them to work and, thus, is required to pay them at least minimum wage for all hours they spend taking such actions.

158.    As a direct result of Sprouts' conduct alleged herein, Plaintiff and Class members have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages.

159.    Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Sprouts' minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible.

160.    The Plaintiffs and the Class were paid no monetary compensation whatsoever by the Defendant for performing labor suffered or permitted by the Defendant and arising from the employer/employee relationship and such failure to pay the Plaintiffs

and the Class any compensation whatsoever violates the minimum hourly wage and overtime requirements of Colo. Rev. Stat. Ann. § 8-4-105 and 7 C.C.R.  § 1103-1.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

**COUNT X – FAILURE TO PAY WAGES UNDER MISSOURI LAW**
**Mo. Ann. Stat. § 290.500 et seq.**
**For Missouri residents of all subclasses**

161.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

162.    Pursuant to the applicable provisions of the Mo. Ann. Stat. § 290.500 et seq., the named Plaintiffs and the Class similarly situated were entitled to at least the minimum Missouri hourly wage ($7.65 per hour in 2015, as amended), for each hour that they labored in Defendant's business and in the event they worked more than 40 hours a week an overtime hourly wage of time and one-half such minimum hourly wage for all hours worked in excess of 40 hours per week.

163.    Through Sprouts' wrongful conduct alleged herein, Sprouts suffered and permitted Plaintiffs and the Class members to work and failed to pay them at least minimum wage for all of the time that Plaintiffs and the Class members reasonably have spent to address and attempt to ameliorate, mitigate, and deal with the actual and ongoing consequences of its release of PI.  That work suffered includes but is not limited to: (i) identifying and dealing with fraudulent charges and accounts, including tax refund fraud, (ii) frequently obtaining and/or purchasing credit reports from multiple credit reporting agencies, (iii) placing and removing fraud alerts and security freezes on credit reports,

(iv) obtaining and/or purchasing credit monitoring and internet monitoring services, (v) obtaining and/or purchasing identity theft insurance, (vi) spending time on the telephone attempting to sort out issues related to the breach, (vii) and in some instances obtaining new Social Security numbers.

164.    Sprouts placed the burden on Plaintiffs and Class members to spend hours of their time addressing these issues.

165.    Plaintiffs and Class members have been required to take these actions as a result of their employment with Sprouts, and Sprouts is or should be aware that Plaintiffs and Class members are taking such actions, and spending hours of their time to do so, Sprouts has suffered and permitted them to work and, thus, is required to pay them at least minimum wage for all hours they spend taking such actions.

166.    As a direct result of Sprouts' conduct alleged herein, Plaintiff and Class members have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages.

167.    Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Sprouts' minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible.

168.    The Plaintiffs and the Class were paid no monetary compensation whatsoever by the Defendant for performing labor suffered or permitted by the Defendant and arising from the employer/employee relationship and such failure to pay the Plaintiffs

and the Class any compensation whatsoever violates the minimum hourly wage and overtime requirements of Mo. Ann. Stat. § 290.500 et seq.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

### COUNT XI – FAILURE TO PAY WAGES UNDER NEW MEXICO LAW
### N.M. Stat. Ann. § 50-4-22 et seq. (West)
### For New Mexico residents of all subclasses

169.    Plaintiffs incorporate by reference the preceding and following paragraphs as though fully set forth herein.

170.    Pursuant to the applicable provisions of the N.M. Stat. Ann. § 50-4-22 et seq. (West), the named Plaintiffs and the Class similarly situated were entitled to at least the minimum New Mexico hourly wage ($7.75 per hour in 2015, as amended), for each hour that they labored in Defendant's business and in the event they worked more than 40 hours a week an overtime hourly wage of time and one-half such minimum hourly wage for all hours worked in excess of 40 hours per week.

171.    Through Sprouts' wrongful conduct alleged herein, Sprouts suffered and permitted Plaintiffs and the Class members to work and failed to pay them at least minimum wage for all of the time that Plaintiffs and the Class members reasonably have spent to address and attempt to ameliorate, mitigate, and deal with the actual and ongoing consequences of its release of PI.  That work suffered includes but is not limited to: (i) identifying and dealing with fraudulent charges and accounts, including tax refund fraud, (ii) frequently obtaining and/or purchasing credit reports from multiple credit reporting agencies, (iii) placing and removing fraud alerts and security freezes on credit reports,

52

(iv) obtaining and/or purchasing credit monitoring and internet monitoring services, (v) obtaining and/or purchasing identity theft insurance, (vi) spending time on the telephone attempting to sort out issues related to the breach, (vii) and in some instances obtaining new Social Security numbers.

172.    Sprouts placed the burden on Plaintiffs and Class members to spend hours of their time addressing these issues.

173.    Plaintiffs and Class members have been required to take these actions as a result of their employment with Sprouts, and Sprouts is or should be aware that Plaintiffs and Class members are taking such actions, and spending hours of their time to do so, Sprouts has suffered and permitted them to work and, thus, is required to pay them at least minimum wage for all hours they spend taking such actions.

174.    As a direct result of Sprouts' conduct alleged herein, Plaintiff and Class members have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages.

175.    Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Sprouts' minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible.

176.    The Plaintiffs and the Class were paid no monetary compensation whatsoever by the Defendant for performing labor suffered or permitted by the Defendant and arising from the employer/employee relationship and such failure to pay the Plaintiffs

and the Class any compensation whatsoever violates the minimum hourly wage and

overtime requirements of N.M. Stat. Ann. § 50-4-22 et seq. (West) et seq.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class,

respectfully seek the relief set forth below.

## COUNT XII – FAILURE TO PAY WAGES UNDER NEVADA LAW
### Nev. Admin. Code 608.100 et seq.
### For Nevada residents of all subclasses

177.    Plaintiffs incorporate by reference the preceding and following paragraphs

as though fully set forth herein.

178.    Pursuant to the applicable provisions of the Nev. Admin. Code 608.100 et

seq., the named Plaintiffs and the Class similarly situated were entitled to at least the

minimum Nevada hourly wage ($7.25 per hour in 2015, or $8.25 if no benefits, as

amended), for each hour that they labored in Defendant's business and in the event they

worked more than 40 hours a week an overtime hourly wage of time and one-half such

minimum hourly wage for all hours worked in excess of 40 hours per week.

179.    Through Sprouts' wrongful conduct alleged herein, Sprouts suffered and

permitted Plaintiffs and the Class members to work and failed to pay them at least

minimum wage for all of the time that Plaintiffs and the Class members reasonably have

spent to address and attempt to ameliorate, mitigate, and deal with the actual and ongoing

consequences of its release of PI.  That work suffered includes but is not limited to: (i)

identifying and dealing with fraudulent charges and accounts, including tax refund fraud,

(ii) frequently obtaining and/or purchasing credit reports from multiple credit reporting

agencies, (iii) placing and removing fraud alerts and security freezes on credit reports,

(iv) obtaining and/or purchasing credit monitoring and internet monitoring services, (v) obtaining and/or purchasing identity theft insurance, (vi) spending time on the telephone attempting to sort out issues related to the breach, (vii) and in some instances obtaining new Social Security numbers.

180.   Sprouts placed the burden on Plaintiffs and Class members to spend hours of their time addressing these issues.

181.   Plaintiffs and Class members have been required to take these actions as a result of their employment with Sprouts, and Sprouts is or should be aware that Plaintiffs and Class members are taking such actions, and spending hours of their time to do so, Sprouts has suffered and permitted them to work and, thus, is required to pay them at least minimum wage for all hours they spend taking such actions.

182.   As a direct result of Sprouts' conduct alleged herein, Plaintiff and Class members have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages.

183.   Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Sprouts' minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible.

184.   The Plaintiffs and the Class were paid no monetary compensation whatsoever by the Defendant for performing labor suffered or permitted by the Defendant and arising from the employer/employee relationship and such failure to pay the Plaintiffs

and the Class any compensation whatsoever violates the minimum hourly wage and

overtime requirements of Nev. Admin. Code 608.100 et seq.

185.    WHEREFORE, Plaintiffs, on behalf of themselves and the members of the

Class, respectfully seek the relief set forth below.

### COUNT XIII – FOR FAILURE TO PAY MINIMUM WAGE UNDER THE FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201 et seq.) For all Subclasses

186.    Plaintiffs incorporate by reference the preceding and following paragraphs

as though fully set forth herein.

187.    Pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and §

207, the named Plaintiffs and the Class similarly situated were entitled to at least the

minimum hourly wage, for each hour that they labored in Defendant's business and in the

event they worked more than 40 hours a week an overtime hourly wage of time and one-

half such minimum hourly wage for all hours worked in excess of 40 hours per week.

188.    Through Sprouts' wrongful conduct alleged herein, Sprouts suffered and

permitted Plaintiffs and the Class members to work and failed to pay them at least

minimum wage for all of the time that Plaintiffs and the Class members reasonably have

spent to address and attempt to ameliorate, mitigate, and deal with the actual and ongoing

consequences of its release of PI.  That work suffered includes but is not limited to: (i)

identifying and dealing with fraudulent charges and accounts, including tax refund fraud,

(ii) frequently obtaining and/or purchasing credit reports from multiple credit reporting

agencies, (iii) placing and removing fraud alerts and security freezes on credit reports,

(iv) obtaining and/or purchasing credit monitoring and internet monitoring services, (v)

obtaining and/or purchasing identity theft insurance, (vi) spending time on the telephone attempting to sort out issues related to the breach, (vii) and in some instances obtaining new Social Security numbers.

189.    Sprouts placed the burden on Plaintiffs and Class members to spend hours of their time addressing these issues.

190.    Plaintiffs and Class members have been required to take these actions as a result of their employment with Sprouts, and Sprouts is or should be aware that Plaintiffs and Class members are taking such actions, and spending hours of their time to do so, Sprouts has suffered and permitted them to work and, thus, is required to pay them at least minimum wage for all hours they spend taking such actions.

191.    As a direct result of Sprouts' conduct alleged herein, Plaintiff and Class members have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages.

192.    Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Sprouts' minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible.

193.    The Plaintiffs and the Class were paid no monetary compensation whatsoever by the Defendant for performing labor suffered or permitted by the Defendant and arising from the employer/employee relationship and such failure to pay the Plaintiffs and the Class any compensation whatsoever violates the minimum hourly wage requirements of 29 U.S.C. § 206 and, in the event any of the class members or Plaintiff

ever worked in excess of 40 hours in a week, the overtime pay requirements of 29 U.S.C. § 207.

194.    The Plaintiffs on behalf of themselves and all other similarly situated persons who worked for Sprouts during 2015 who consent in writing to join this action and who satisfy one or more of the following descriptions: All of those 2015 Sprouts workers whose W-2s were the subject of the data breach and who fit within the descriptions of the Subclasses described above in paragraphs 14-30 which are made up of 2015 Sprouts workers who 1) were minors at the time of their employment in 2015 and whose Arbitration Agreements have been revoked, and/or ; 2) never signed any Sprouts Arbitration Agreement, and/or; 3) at the time of the breach had worked for Sprouts in 2015, were not members of Subclasses 1) or 2) above, and were residents on one of the following states: Arizona, California, Colorado, Georgia, Missouri, New Mexico, Nevada, or Texas. Members of Subclass 3) seek damages up to the jurisdictional limit of the small claims court in the state they were a resident at the time of the data breach. Plaintiffs propose that all such persons be notified of this action through the dispatch of a written notice to the last known names and addresses of such persons that are set forth in the Defendant's records or that can otherwise be ascertained, and such Plaintiffs seek, on this Claim for Relief, a judgment for unpaid minimum wages and overtime wages and additional liquidated damages of 100% of any such unpaid wages, such sums to be determined based upon an accounting of the hours worked by the named Plaintiffs and any such other persons who consent to join this action, and the Plaintiffs also seek an award of attorney's fees, interest and costs as provided for by the FLSA.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seeks the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, the representative Plaintiffs, on behalf of themselves and on behalf of the Plaintiffs who are described within the Rule 23 definition of any class certified by the Court, pray for the following relief:

A.   Certify this case as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and as a Collective action under the FLSA, and denominate Plaintiffs as adequate representatives for the Class and the undersigned counsel as counsel for the Class and Collective actions;

B.   That, at the earliest possible time, Plaintiffs be allowed to give Notice of this action, or that the Court issue such Notice, to all persons who have at any time during the 2015, up through and including the date of this Court's issuance of Court-supervised Notice, been employed, as described above, by Sprouts and fit within the definition of one or more of the Subclasses set out above. Such Notice shall inform such workers or former workers that this civil action has been filed and of the nature of the action and set a time within which they are allowed to file their consents (in the collective action) to be included with the Collective Action claims herein, and in the Rule 23 Class Action, once certified the Court should set a time within which the members of the Class Action might opt out of the action;

C.      That the Court issue such injunctive and/or declaratory or other equitable relief to which the Plaintiffs may be entitled, so that the unlawful behavior of the Defendant may be stopped and remedied;

D.      Declare unlawful the acts and practices alleged herein, and enjoin the Defendant from committing the acts alleged herein.  Included in the injunction, the provision of credit monitoring services for Plaintiffs and the Class for at least twenty-five (25) years, the provision of bank monitoring for the Plaintiff Class for at least twenty-five (25) years, the provision of credit restoration services for Plaintiffs and the Class for at twenty-five (25) years, and the provision of identity theft insurance for Plaintiffs and the Class for at least twenty-five (25) years;

E.      Enter judgment against Defendant for the violations alleged herein;

F.       Award the actual and compensatory damages incurred by Plaintiffs and the members of the Class and Collective Actions as a result of the wrongful acts complained of, along with pre-judgment and post- judgment interest at the maximum rate allowed by law;

G.      Award Plaintiffs punitive and exemplary damages for the wanton and willful behavior of the Defendant, as alleged herein.

H.      Award Plaintiffs all damages allowed under state statutory laws, as alleged herein.

I.       That the representative Plaintiffs be granted incentive awards, as deemed reasonable by the Court;

J.      That the Plaintiffs be awarded their reasonable attorney's fees;

K.      That the Plaintiffs be awarded the costs and expenses of this action; and

L.      That the Plaintiffs be awarded such other legal and/or equitable relief as is permitted by law.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL TRIABLE ISSUES INCLUDING BUT NOT LIMITED TO THE FACTUAL QUESTION OF WHETHER THE MEMBERS OF SUBCLASS B ENTERED INTO ANY ARBITRATION AGREEMENT, PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 4**

Respectfully submitted, this 15 day of May, 2019.

*s/ David H. Miller*
David H. Miller, Esq.
Adam Harrison, Esq.
SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: 303-839-1650
FAX: 720-235-4377
Email: DMiller@sawayalaw.com
        AHarrison@sawayalaw.com
        ~~HJoyce@sawayalaw.com~~

Attorneys for Plaintiffs

Plaintiffs' address:

Through counsel:

David H. Miller
1600 Ogden Street
Denver, CO 80218

61

1

2                            **<u>Certificate of Service</u>**

3
          I hereby certify that on the 15th day of May, 2019, I electronically transmitted the
4    attached document to the Clerk's Office using the CM/ECF system for filing and
5    transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

6    Paul G. Karlsgodt
     Casie Collignon
7    Michelle Gomez
8    BAKER & HOSTETLER, LLP
     1801 California Street, Suite 4400
9    Denver, CO 80202

10
     Daniel B. Pasternak
11   SQUIRE PATTON BOGGS (US) LLP
12   One East Washington Street, Suite 2700
     Phoenix, AZ 85004
13

14                                                    *s/ David H. Miller*

15                                                    _____
                                                      David H. Miller
16

17

18

19

20

21

22

23

24

25

26

27

28